UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

---

| | | |
|---|---|---|
| CLINTON LEWISON and BEVERLY LEWISON, | : | CIV. 13-4031 |
| Plaintiffs, | : | MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION |
| vs. | : | FOR SUMMARY JUDGMENT |
| WESTERN NATIONAL MUTUAL INSURANCE COMPANY, | : | |
| Defendant. | : | |

## INTRODUCTION

COMES NOW Western National Mutual Insurance Company ("Western National") by and through its counsel, and presents its Memorandum in support of its Motion for Summary Judgment. There are no genuine issues of material fact and Western National is entitled to judgment as a matter of law.

## SUMMARY OF ARGUMENT

It is proper, meet, and just that an insurer that has charged and collected a premium for first party coverage such as underinsured motorist benefits should pay the benefit after a loss – if it is owed. When insurer and insured aren't able to agree on what, if anything, is owed, then the insured's remedy is a breach of contract suit and a judgment from a court resolving the issue. In some cases, the insurer's position will be vindicated and, in others, not. But in the latter scenario, a rejection of the insurer's position by a

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

judge or jury does not, *a priori*, mean that the insurer acted in bad faith in not acceding to its insured's pre-suit payment demand.

In South Dakota, a wrong call, without more, is not actionable bad faith. An insurer providing first party benefits can be held liable for bad faith damages only if the insured can establish (1) that the insurer had no reasonable basis for denying the benefit and (2) that the insurer knew that it had no such basis. *Champion v. U.S. Fidelity and Guaranty Company*, 399 N.W.2d 320 (S.D. 1987). If the claim was "fairly debatable," then there is no bad faith. *Hammonds v. Hartford Fire Insurance Company*, 501 F.3d 991, 996 (8th Cir. 2007).

It is equally clear under South Dakota law that although "first party bad faith is an intentional tort which typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured," *Hein v. Acuity Insurance Company*, 731 N.W.2d 231, 235 (S.D. 2007), an insurer isn't off the bad faith hook with an explanation, paraphrasing Donald Rumsfeld, that "we didn't know what we didn't know." That is to say, Western National fully appreciates that it had a duty to timely and fairly investigate the Lewisons' claims for benefits before making the call on whether to make any payments. *Dakota, Minn. & Eastern RR Corp. v. Acuity Insurance Company*, 771 N.W.2d 623, 629 (S.D. 2009). And it did just that. Without a doubt, the Lewisons' claims were "fairly debatable" as of May 21, 2012, when it rejected Lewisons' claims.

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

When the Court first adopted the tort of first party insurance bad faith in *Champion, supra*, it cited the ground-breaking decision of the Wisconsin Supreme Court in *Anderson v. Continental Insurance Company*, 271 N.W.2d 368 (1978). *Champion, supra*, 399 N.W.2d, at 323-24. It is appropriate, therefore, to look to a more recent bad faith decision from that same court if only for its favorable reference to a 2009 law review article surveying the evolution of first party insurance bad faith law across the country:

> As intended, plaintiff's ability to bring a separate tort action has helped to curb [insurance company] abuse and unfair practices. Unfortunately, as quickly as bad-faith law developed to come to the aid of the disadvantaged party in a contract or fiduciary relationship, it has evolved into a litigation quandary that often misses its basic purpose … In some cases, enterprising plaintiff's attorneys seek out technical violations to bring a bad faith action where there is no purposeful or malevolent will, or even a remotely unfair act. In legitimizing such claims, bad-faith law has lost its way.

*Brethorst v. Allstate Insurance Co.*, 748 N.W.2d 467, 482 (Wis. 2011), quoting Schwartz & Appel, Common-Sense Construction of Unfair Claims Settlement Statutes: Restoring the Good Faith in Bad Faith, 58 Am. U. Law. Rev. 1477, 1478 (2009).

Western National and the Lewisons initially were at loggerheads on whether UIM benefits were owed. Western National's decision to contest Lewisons' claim was made in good faith based upon all that was known as of May 21, 2012. In the course of the breach of contract suit that followed the insurer's decision, it became aware of

3

information causing it to re-evaluate that decision. And so it is that the suit was then settled.

Western National did what was required of it under its insurance contract with the Lewisons and under South Dakota law. Bad faith law has "lost its way" if a claim of the kind made here is permitted to proceed beyond the summary judgment stage. Western National's Statement of Undisputed Facts will go unrefuted. After the settlement of Lewisons' breach of contract suit last February, Western National is now entitled to summary judgment on their bad faith claim.

## FACTS

### A. Lewisons' Injury Claim: The First Fifteen Months.

On August 24, 2010, the Lewisons sustained injuries when their car was hit by one being driven by Adam West. There was never a doubt that West was 100 percent at fault for the accident.

Within 24 hours of receiving notice of the accident, a Western National adjuster, Jackie Dekker, was in contact with the Lewisons and confirmed their entitlement to medical pay coverage. Medical authorizations were furnished to the Lewisons so that the insurer would be able to obtain copies of treatment records. About a month later, Attorney Scott Abdallah notified Western National of his representation of the Lewisons and, from that point forward, Dekker dealt with him in monitoring Lewisons' claims. Meanwhile, Lewisons' medical bills were being promptly paid by Western National until exhaustion of the medical pay coverages.

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

West's insurer refused to disclose the limits of his liability coverage. It was only in September 2011 – a year later – that Dekker first learned from Abdallah that West's liability limits were $25,000.00 per person. He also informed Dekker that the Lewisons were still treating and that the claims against West were pending. No UIM claim had been submitted. Dekker's medical investigation continued.

It was in mid-November that Attorney Abdallah furnished a *Schmidt* notice. Western National's Director of Legal Services, John Buckley, had by then assumed claim monitoring responsibilities and soon advised Abdallah that his clients were free to accept West's liability limits and to provide a full release in return.

    **B.**    **January-May 2012: Buckley Continues Claim Investigation.**

In December 2011, the Eighth Circuit Court of Appeals filed an Opinion affirming this Court's previous decision that Western National had violated duties owed to its insured in a UIM claim setting. *Tripp v. Western National Mutual Insurance Company*, 664 F. 3d 1200 (8th Cir. 2011). Chastened, Buckley resolved not to repeat any mistakes that his company may have made in handling Ms. Tripp's claim. To that end, he did the following:

    (1)    On January 10, 2012, he retained the services of a prominent Sioux Falls attorney, Douglas Deibert, to assist in the investigation into and the evaluation of Lewisons' anticipated UIM claims.

    (2)    Upon receiving Lewisons' first time demand for UIM benefits just a few days later, he immediately repeated a prior request for a list of all healthcare providers who had treated the Lewisons during the 10 year period leading up to the car accident and furnished additional medical authorizations to facilitate his ongoing investigation. He advised Abdallah

5

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

that there would be a response to the UIM settlement demand upon completion of the medical investigation, after IMEs to be performed by a Sioux Falls orthopedic surgeon, and after examinations of the Lewisons under oath.

(3) In March, Buckley requested and received recommendations for a qualified Sioux Falls doctor to perform the examinations of the Lewisons. Dr. David Hoversten was recommended by a Minneapolis attorney and the recommendation was seconded by Deibert. Western National had never before utilized Dr. Hoversten for an independent medical examination. Buckley assumed that Dr. Hoversten would be forthright in his evaluation of the injury claims being made by the Lewisons. Further, when a controversy arose concerning whether Western National was even entitled to perform examinations under oath of the Lewisons, Buckley deferred further efforts on that score, pending the results of the examinations to be performed by Dr. Hoversten.

(4) Buckley received Dr. Hoversten's reports in May indicating that the Lewisons had sustained only temporary soft tissue injuries as a result of the car accident and that any residuals from it had long run their course. As to the claim being made that Mr. Lewison's total knee replacement performed in February 2011 was made necessary because of the accident, Dr. Hoversten said that there was no causal relationship and that the pre-existing conditions in Mr. Lewison's knee were such that he would have required the knee replacement with or without the accident.

(5) On the basis of all of the available medical records, the Hoversten reports, input from Deibert, his 18 years of experience in dealing with personal injury claims, and the absence of medico-legal reports attesting to permanent injuries as to either Mr. or Mrs. Lewison except respecting Mr. Lewison's claimed knee injury, Buckley concluded that neither of the Lewisons could establish compensable damages arising from the car accident in excess of $25,000.00. On May 21, 2012, he so advised Lewisons' counsel.

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

### C. Lewisons' Medical Histories and Post-Accident Treatments.

### (1) Beverly Lewison

Beverly Lewison had treated for complaints of neck, mid-back and low back pain for years prior to the car accident. She had had right knee surgery just two months earlier. Copies of treatment records of Chiropractor Craig Sauer show that she had seen him four days before the car accident. Ex. 9, at p. 14. Beyond that, the post-accident treatment records indicate that Ms. Lewison had successfully completed a physical therapy program ending in December 2010 and that she had been released from further treatment by her chiropractor on January 6, 2011 to be seen in the future on a strictly PRN basis. Ex. 8. Attorney Abdallah's January 2012 settlement package did not include a report from any of Ms. Lewison's doctors giving her a disability rating or indicating that any of her injuries were permanent.

### (2) Clinton Lewison

Mr. Lewison, too, had a record of treatment for neck and back problems before the August 24, 2010 car accident. More importantly, he had dealt with left knee problems for more than 18 months with a diagnosis of significant degenerative joint disease in the left knee following a fall. Exs. 6, 10, at p. 2; Ex. 11, at pp. 3, 5 and 7. When Mr. Lewison first saw Dr. Walker after the accident on December 22, 2010, he reported that he had had cortisone injections in 2009 but that he had not gotten relief with knee pain continuing into 2010. Ex. 6.

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

The post-accident treatment records indicate that Mr. Lewison had not made much of any knee pain that he might have been experiencing immediately after the accident. The first doctor to see him on August 26, Dr. Jeffrey Meyer, did not document any knee pain complaints and though many x-rays were taken on that occasion, none were of either knee. Ex. 7. The left knee complaints became prominent only as of November 2010, leading to Mr. Lewison's first-time visit with Dr. Walker on December 22.[1] In due course, surgery was recommended and it was accomplished on February 14, 2011. When Mr. Lewison, post-operatively, posed the question concerning a causal relationship between the car accident and the need for the knee replacement, Dr. Walker was equivocal, at best. Ex. 5.

Other than Dr. Walker's cryptic one word answers to questions set out in a one page June 10, 2011 letter addressing the knee injury claim, no medico-legal report was supplied to Western National before May 21, 2012, indicating that Mr. Lewison had any other permanent accident-related injuries.

D. **Breach of Contract Suit and Settlement.**

Lewisons sued on a single claim of breach of contract in June 2012. In January 2013, Dr. Hoversten was deposed and, by all accounts, did not do a good job in defending his previously announced opinions. Western National's counsel advised that Dr.

---

[1] This is apparent even from Attorney Abdallah's detailed chronicle of Ms. Lewison's course of treatment after the accident. While there is a mention of a complaint of knee pain at the time of the first chiropractor visit on August 27, 2010, Ex. 10a, there are precious few references to knee complaints prior to November and no actual treatment of the knee until well into October. Ex. 4 at pp. 2-6.

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

Hoversten would not likely come across as a credible witness before a jury. This development led Buckley to re-evaluate Mr. Lewison's claim.

The parties attended a mediation session with Attorney Lon Kouri a month later resulting in a policy limit settlement of Mr. Lewison's claims. Though Buckley remained skeptical about Ms. Lewison's claim, he agreed to a payment of $30,000 to resolve her claim. It was agreed that any claim for attorneys' fees pursuant to SDCL § 58-12-3 was resolved and that the settlement would not preclude a bad faith claim against Western National.

This lawsuit followed close upon the heels of the settlement.

## ARGUMENT

### A. Standard for Summary Judgment.

A party is entitled to summary judgment upon a showing that there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law. F.R.C.P. 56(a). A fact is "material" only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In opposing a request for summary judgment, the non-moving party may not rest upon mere allegations in the pleadings; but must set forth specific facts that would be admissible at trial that raise a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industries Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). More is required than a mere metaphysical doubt as to

9

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

the material facts. *Id*. at 586. When a party cannot support each essential element of a cause of action, then summary judgment must be granted because the missing proof makes all other facts immaterial. *Celotex, supra*, 477 U.S. at 322-23. A mere scintilla of evidence in support of the non-movant will be insufficient. There must be substantial evidence on which a jury could reasonably find for the non-moving party. *Anderson, supra*, 477 U.S. at 252. A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is generally disputed. F.R.C.P. 56(c)(1); *Gacek v. Owens & Minor Distributing Company, Inc.*, 666 F.3d. 1142, 1145 (8th Cir. 2012).

### B. Bad Faith Turns on Facts Known or Reasonably Available at Time of Decision to Deny Benefits.

#### (1) Western National's Investigation: Timely and Complete

Although Western National's foregoing rendition of the facts includes events taking place after its decision to deny UIM benefits on May 21, 2012, (Section D) the law is clear that whether an insurer acted in bad faith in conducting an inadequate investigation turns on the facts known by the insurer and its conduct at the time of the denial of the benefit. *Isaac v. State Farm Mutual Automobile Insurance Company*, 522 N.W.2d 752, 758 (S.D. 1994); *Walz v. Fireman's Fund Insurance Company*, 556 N.W.2d 68, 70 (S.D. 1996); and *DM & E, supra*, 771 N.W.2d at 629.

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

In *DM & E*, the Court stressed the public policy concerns militating against the admissibility of an insurer's post-litigation conduct and how infrequent the case will be where an insurer's post-litigation conduct is relevant or admissible:

> … we believe it would be a rare case where the insurer's decisions and conduct in the underlying litigation would be admissible in a first party bad faith claim.

*DM & E, supra*, 771 N.W.2d at 635.

Western National is aware of this Court's Order, citing *DM & E,* in *Hurley v. State Farm Mutual Automobile Insurance Company*, 2012 WL 2862828 (D.S.D.), that an insurer's post-litigation conduct may be relevant in determining whether it had consciously engaged in wrongdoing during the processing or paying of policy benefits to its insured. In *Hurley*, the insurer had asserted an advice-of-counsel defense to the bad faith claim but had then claimed attorney/client privilege in refusing to provide discovery concerning the communications with its attorneys – information that might have been relevant in explaining a significant increase in the insurer's offer of settlement post-litigation in contrast to its pre-suit settlement offer. This Court ordered that the evidence in question was potentially relevant and, most certainly, discoverable and that the attorney/client privilege had been waived. *Id.* at 5.

In contrast to *Hurley*, Western National has freely disclosed all communications between it and Attorney Deibert and the record fairly reflects what accounted for Western National's eventual decision to pay its policy limit in respect to Mr. Lewison's claim: counsel's advice that Dr. Hoversten's discovery deposition testimony was not as strong

11

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

as the opinions stated in his IME report and that a jury might find that he was not a credible witness. Working with that information, Western National's Buckley did an independent reading of the newly minted Hoversten deposition and concluded that his lawyer's concerns were well-founded. This led to Buckley's decision to extend an offer of policy limits in order to resolve Mr. Lewison's claim. Consistent with *DM & E*, though, this evidence is not relevant or admissible for it penalizes Western National for Buckley's conduct in making settlements with Lewisons when what he did is what was merely what was required of him: to continually evaluate claims as new information was acquired.

So, the focus once again must be on what Buckley knew or didn't know as of May 21, 2012, to find any evidence to support the notion that he engaged in intentional wrongdoing in making his decision to deny UIM benefits to the Lewisons. Was, somehow, Buckley's investigation inadequate? Was there no reasonable basis for denying Lewisons' claims? If so, did he know that there was no such basis? In the end, were the Lewison claims "fairly debatable?"[2]

---

[2] *DM & E* quotes 46A CJS <u>Insurance</u> §1873 for the following proposition:

> If an insured's claim is fairly debatable either in fact or law, an insurer cannot be said to have denied the claim in bad faith. <u>The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish that the insurer had a reasonable basis to deny the claim</u>. The focus is on the existence of a debatable issue, not on which party is correct. (Emphasis supplied.)

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

Western National cannot fairly be accused of failing to timely investigate Lewisons' claims. (1) West's causal fault was never in dispute. (2) Western National began its collection of treatment records upon receipt of signed medical authorizations within weeks of the accident. (3) After notification from Abdallah concerning his representation of the Lewisons, Dekker had periodic contacts with his office for the next twelve months before being advised in August 2011 concerning the amount of West's liability limits, the fact that Lewisons' claims against West were still pending, and that the Lewisons were still treating. (4) Even before the first time demand for UIM benefits in mid-January 2012, Buckley had already retained a South Dakota attorney to assist in investigating and evaluating the claim. He asked for – but was denied – the opportunity to examine the Lewisons under oath. (5) Arrangements were made as quickly as possible for IMEs to be performed by an independent orthopedic surgeon. (6) Meanwhile, Buckley was doing his own review of medical records and attempting to come to grips with the UIM policy limits demands that had been made. (7) By May 2012, Buckley had

---

*DM & E*, 771 N.W.2d at 630. A reading of the cited CJS material reveals that it is accurately quoted in *DM & E* court. But the quoted sentence is obviously wrong when the trail is pursued to the case that is cited in CJS for that proposition: *See Bellville v. Farm Bureau Mutual Insurance Company*, 702 N.W.2d 468, 473 (Iowa 2005) where the Iowa Court put out the rule as follows:

> The fact that the insurer's position is ultimately found to lack merit <u>is not sufficient</u> by itself to establish the first element of a bad faith claim. \*\*\* The focus is on the existence of a debatable issue, not on which party was correct. \*\*\* (Emphasis supplied.)

Accordingly, the quoted sentence above was a mistake. Mistakes sometimes do occur.

13

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

received Hoversten's reports and had then promptly furnished his explanation to Lewison's counsel regarding his decision not to pay UIM benefits.

The law does not require a letter-perfect investigation nor a Solomonic decision on what a claim might be worth. *Anderson v. Western National Mutual Insurance Company*, 857 F.Supp.2d 896 (D.S.D. 2012) (citing 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 207:25 (3d. Ed. 2011) and Stephen Ashley, Bad Faith Actions Liability & Damages § 5:8 (updated September 2011)). As Judge Lange noted, "being dilatory or even slow doesn't in and of itself amount to bad faith." *Anderson, supra*, 857 F.Supp.2d at 905, quoting *AARP v. AON/Combined Insurance Company*, 300 F.3d 913, 916 (8th Cir. 2002).

In short, Buckley's investigation was timely without a stone left unturned.

### (2) Mere Mistake Re: Valuation of Claim Not Actionable.

In respect to Mr. Lewison's knee injury claim, Buckley has admitted that his May 21, 2012 letter to Abdallah mistakenly indicates that the treatment records had not described a knee pain complaint from Mr. Lewison for the first time until December 2010. But it isn't as if he had intentionally misrepresented the facts. In his previous letter to Dr. Hoversten, he had specifically mentioned that, indeed, Mr. Lewison had made such complaints on two or three isolated occasions in the first few weeks after the accident and at a time when he was seeing chiropractors, therapists, and medical doctors on an ongoing basis. Ex. 10. He knew, too, that there was no indication that Mr. Lewison had made any complaints about knee pain at the time of his first post-accident doctor visit

14

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

on August 26 and at a time when the examining physician had ordered multiple x-rays of Mr. Lewisons' spine and his right shoulder but not of either knee. Ex. 7. Buckley knew from pre-accident treatment records that Mr. Lewison had been diagnosed with tricompartmental degenerative changes of the left knee at least as early as February 2009, when Lewison was seen after taking a fall and that he had an abnormal gait and that he suffered from severe "genu valgum gonarthrosis."

With the benefit of Hoversten's opinions and regardless of whether Mr. Lewison had made isolated reports of knee pain before December 2010, Buckley's evaluation was the same: the car accident had not been a substantial factor requiring knee surgery in February 2011. Buckley Aff. XVI. Buckley believed in May 2012 that South Dakota law required proof that an accident had been a <u>substantial</u> factor in requiring the treatment or explaining the injury in question. *Shippen v. Parrott*, 553 N.W.2d 503 (S.D. 1996); S.D. Civil Jury Pattern Instruction No. 50-10-20. He correctly concluded that the causation question was "fairly debatable." Once again, first party insurer bad faith involves intentionally tortious conduct that requires proof of a compensable loss. *McDowell v. Citi-Corp USA, Inc.*, 734 N.W.2d 14 (S.D. 2007). No misstatement in Buckley's letter to attorney Abdallah was a cause of compensable damage to Mr. Lewison.

Even if, arguendo, Buckley was negligent or guilty of bad judgment, that is not enough. Instead, the evidence must show that he consciously engaged in wrongdoing. *Champion, supra*, 399 N.W.2d at 324; *DM & E, supra*, at 629; and *Anderson, supra*, 857

15

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

Supp. 2d, at 904. As the South Dakota Supreme Court has said, it is only the frivolous or unfounded refusal to comply with a duty under an insurance contract that will qualify as bad faith. *Hein, supra*, 731 N.W.2d at 235. What that means, simply, is that when insurer and insured disagree on whether benefits are owed, the parties are in an adversarial relationship and the insurer is permitted to challenge claims that are fairly debatable. *Id*. The value of Lewisons' claims was "fairly debatable" as of May 2012 and remained that way until settlement in February 2013.

### C. Without Evidence of Conscious Wrongdoing, Western National is Entitled to Summary Judgment.

Buckley made all of the final decisions concerning the Lewisons' UIM claims and was guided by his 22 years of experience as a litigation lawyer or litigation supervisor involving personal injury claims, his familiarity with the medical histories of the Lewisons before and after the car accident, input from a well-respected Sioux Falls attorney and, finally, the opinions and conclusions of an orthopedic surgeon who had come highly recommended from reliable sources. What's more, there is no record evidence that Buckley had an incentive to pay a UIM claim for an amount less than its fair value because of company "score cards," bonuses, or other financial remuneration coming to him as a reward for underpaying or denying a claim.[3]

---

[3] Western National appreciates that there is ample caselaw in this district suggesting that evidence of bonuses and incentives for upper-level employees may be relevant in a bad faith case as set out more expansively in *Hurley v. State Farm Mutual Automobile Insurance Company*, 2012 WL 1600796 (D.S.D.). Western National has freely produced

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

So, where is there any evidence that Buckley intentionally set about denying UIM benefits to Lewisons with knowledge that what he was doing was wrong? Nowhere. Insurance bad faith is an intentional tort and, although an insurer's decision to deny a claim without having performed <u>any</u> investigation, *ala DM & E,* might point to possible "conscious wrongdoing," such a claim cannot be sustained here. After May 21, 2012, Buckley recognized Western National's continuing obligation to reassess its initial denial of benefits based upon newly received facts. *Walz v. Fireman's Fund Insurance Company, supra*, 556 N.W.2d at 71; *DM &E, supra*, 771 N.W.2d at 633. He did that in February 2013 and the UIM claims were settled. That should have put an end to any further discord between the parties. But it did not. And this Court is now called upon to put an end to Lewisons' groundless bad faith claims.

## CONCLUSION

The UIM Insuring Agreement promises a payment up to the policy limits in the case of the insured suffering damages on account of the fault of an underinsured motorist. The amount of the payment, if any, depends upon what amounts Lewisons were legally entitled to recover from West. As of May 2012, it was "fairly debatable" what they might be. Western National did not act in bad faith and now requests that the Court enter an Order granting summary judgment along with an award representing its costs and disbursements herein.

---

requested personnel files and any documentation for the existence of such incentive programs. There were and are no such incentive programs.

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

Dated this 12th day of December, 2013.

        FULLER & WILLIAMSON, LLP

        /s/ Derek A. Nelsen

        _____
        Derek A. Nelsen
        7521 South Louise Avenue
        Sioux Falls, SD 57108
        Phone: (605) 333-0003
        Fax:   (605) 333-0007
        Email: dnelsen@fullerandwilliamson.com

        GISLASON, MARTIN, VARPNESS & JANES, PA
        James T. Martin
        Attorneys for Defendant
        7600 Parklawn Avenue South
        Suite 444
        Edina, MN 55435
        Phone: (952) 831-5793
        Fax:   (952) 831-5793
        Email: alr@gismarvar.com

        Attorneys for Defendant
        Western National Mutual Insurance Company

Civ. 13-4031
Memorandum in Support of Defendant's Motion for Summary Judgment

# **CERTIFICATE OF SERVICE**

     I certify that on the 12th day of December, 2013, a true copy of the foregoing Memorandum in Support of Defendant's Motion for Summary Judgment was served via e-filing upon:

    Scott A. Abdallah
    Shannon R. Falon
    Johnson, Heidepriem & Abdallah, LLP
    P.O. Box 2348
    Sioux Falls, SD  57101
    Email: sabdallah@jhalawfirm.com
           shannon@jhalawfirm.com
    Attorneys for Plaintiffs

                                        /s/  Derek A. Nelsen
                                    _____
                                    One of the Attorneys for Defendant